**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00022-KDB-DCK**

| | |
|---|---|
| Curtis Neal, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Wal-Mart Stores, Inc. d/b/a Walmart and Synchrony Bank, f/k/a GE Capital Retail Bank, <br><br> Defendants. | **ORDER** |
| Roy Campbell, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Synchrony Bank, <br><br> Defendant. | |
| Barbara Mott, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Synchrony Bank, <br><br> Defendant. | |

This matter is before the Court on two motions in three consolidated putative class action cases – *Neal v. Wal-Mart Stores, et al.*, 3:17-cv-00022 ("Neal"); *Campbell v. Synchrony Bank*, 3:18-cv-00501 ("Campbell"); and *Mott v. Synchrony Bank*, 3:18-cv-00221 ("Mott") – which assert claims against defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Synchrony Bank ("Synchrony") under the Telephone Consumer Protection Act ("TCPA"). Plaintiffs Neal and Mott have moved the Court to appoint their counsel, Greenwald Davidson Radbil PLLC ("GDR") and Terrell Marshall Law Group PLLC ("TMLG"), as Interim Lead Counsel for the consolidated actions (Doc. No. 43), and Plaintiff Campbell has moved to appoint his counsel, Lemberg Law LLC ("Lemberg"), as Interim Lead Counsel and to stay the Mott case (Doc. No. 45).

For the reasons discussed further below, the Court will **GRANT** the motion to stay the Mott case because it effectively duplicates the earlier filed Neal case. However, the Court will **DENY** both motions seeking the appointment of Interim Lead Counsel prior to Class Certification (if any class is ultimately certified) because the Court finds that neither counsel for Neal or Campbell is likely to be able to fully represent the interests of the different putative classes in the respective actions in light of their currently divergent views of the proper scope of the putative classes and their underlying interpretation of the TCPA. Also, it is regrettably apparent that counsel for Neal and Campbell are unable to work together cooperatively such that it would be efficient to appoint them to serve as co-Interim Lead Counsel. However, consistent with the earlier Order of this Court consolidating these cases for discovery, (Doc. No. 41) the Court will enter a Pretrial Order and Case Management Plan that requires the parties to conduct discovery to avoid, as much as possible, multiple, duplicative discovery requests and effort.

## I. Relevant Background

Curtis Neal filed the first of the three cases on January 17, 2017, naming Wal-Mart and later Synchrony as defendants. Neal's claims are based on allegations that he received telephone calls that were not intended for him from Synchrony, which used an automatic telephone dialing system to make the calls. Neal further alleges that he is not, nor was he, one of Synchrony's customers nor did he give Synchrony prior consent to place calls to his cellular telephone number by using an automatic telephone dialing system. Neal alleges that this conduct, more fully detailed in his complaint, violates the TCPA, and he seeks to represent a class defined as follows:

> *Class*: All persons and entities throughout the United States (1) to whom Synchrony Bank placed one or more calls, (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a Synchrony Bank customer; (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice,
> (4) from December 20, 2016 through the date of class certification, or where the first such call was placed on or after June 17, 2016 and through the date of class certification.
>
> *Subclass*: All persons and entities throughout the United States (1) to whom Synchrony Bank placed one or more calls, on behalf of Wal-Mart Stores, Inc., (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a Synchrony Bank customer; (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice, (4) from December 20, 2016 through the date of class certification, or where the first such call was placed on or after June 17, 2016 and through the date of class certification.

Campbell is the second filed case. On January 25, 2017, Campbell filed his complaint in the Northern District of New York (No. 1:17-cv-00080) against defendant J.C. Penney, later substituting Synchrony Bank as the defendant. Campbell generally alleges that Synchrony violated the TCPA by placing automated telephone calls to Campbell on his cellular telephone and continuing to call him even after he told the Synchrony representative that he was not the

person Synchrony was trying to call and expressly requested that Synchrony stop calling him. Campbell seeks to represent a class defined as:[1]

> (1) All persons in the United States (2) to whose cellular telephone number (3) Synchrony placed a non-emergency telephone call (4) using an autodialer or a prerecorded voice (5) after said person had advised Synchrony or their vendor that the call was to a wrong number.

Over Campbell's objection, the Northern District of New York transferred Campbell's case to this Court on September 13, 2018. (Doc. No. 63).

The final case filed was Mott, which was not filed until over a year later, on February 2, 2018 in the Middle District of Florida. Ms. Mott similarly alleges that she received unwanted telephone calls from Synchrony in error and asked Synchrony not to call her again. She seeks, however, only to represent the same class as Neal. Mott voluntarily asked to have her case transferred to the Western District of North Carolina, and on April 25, 2018, the Middle District of Florida transferred Mott's action to this Court. *See Mott*, Docs. 31-32.

With respect to the most recent proceedings in this District, on October 24, 2018 the Court ordered the cases consolidated for discovery, required counsel for the plaintiffs to confer to create a leadership structure for the consolidated cases and submit a discovery plan to the Court within 30 days. (Doc. No. 41). Although the parties submitted a proposed discovery plan on November 21, 2018, plaintiffs' counsel could not agree on how to proceed cooperatively and then did nothing further to pursue their claims. Accordingly, the parties recently informed the Court at the hearing on these motions on July 23, 2019, over eight months later, that no discovery has been pursued by any party and, disappointingly, the case for all practical purposes sits idling in the same place as it

---

[1] The putative class excludes those persons whose claims were released in *Abdeljalil, et al. v. GE Capital Retail Bank*, 12-cv-02078 (S.D. Cal.), as does the putative class in Neal.

did when the proposed discovery plan was submitted.

**II.     Discussion**

    A.     <u>Motion to Stay the Mott Action</u>

As part of his motion to appoint Interim Lead Counsel, Campbell has moved the Court to stay the Mott case while the Neal and Campbell cases proceed on the grounds that Mott is duplicative of the other cases. *See Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982) ("Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed."); *Troche v. Bimbo Foods Bakeries Distribution, Inc.*, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011) ("If the first-filed rule applies, a district court must dismiss, stay, or transfer a later-filed lawsuit in deference to the earlier filed action.").

The Court cannot find any material differences in the Mott and Neal cases as they have been presented. Also, at the hearing on the parties' motions, Mott's counsel acknowledged that the Mott and Neal cases were the same case in all material respects, suggesting only that the class would get a better result if Mott's counsel was appointed along with Neal's counsel to serve as Interim Lead Counsel.[2]  Further, the Court does not find that it would be in the interests of efficient justice to maintain the duplicative Mott action simply to keep her counsel involved (although the Court does not question TMLG's experience, competence or the value they would likely add to a case in which they are counsel). Accordingly, the Court will exercise its discretion to stay the Mott case while the Neal and Campbell cases continue.

---

[2] Counsel for Neal echoed the statement that Mott's and Neal's counsel would work well together, but clearly stated that GDR has ample experience and resources to represent the putative class without Mott's counsel's assistance.

B.  Motion to Appoint Interim Lead Counsel

A court may – but is not required – to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The primary purpose of appointing Interim Class Counsel is to protect the interests of the putative class. *See* Fed. R. Civ. P. 23(g)(4) (appointed counsel "must fairly and adequately represent the interests of the class").

Neal and Campbell have focused their motions seeking the appointment of Interim Class Counsel on the relative merits of their respective counsel in light of the relevant factors the Court must consider in appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). The Court finds that both GDR and Lemberg would be well qualified in terms of their identification and investigation of these potential claims, relevant experience, substantive knowledge of the law governing TCPA actions and committed resources.

However, if the primary purpose of appointing Interim Class Counsel is to *protect* the putative class, it is axiomatic that the Court should not appoint Interim Class Counsel unless the Court is satisfied that the putative classes will actually be aided and protected by the appointment. Simply put, the Court is not convinced that either GDR or Lemberg (or an appointment together as co-Interim Lead Counsel) will protect and further the interests of the putative classes in *both* Neal and Campbell.

Campbell's counsel clearly would not be an appropriate choice to represent the interests

of the putative class Neal seeks to represent. Indeed, Campbell has already raised questions in his submission concerning whether the putative Neal class can be certified. *See* Doc. No. 45-1 at p. 9 ("Campbell has concerns that the class that Neal seeks to represent will suffer from issues of ascertainability, typicality and predominance …."). Similarly, it does not appear that Neal's counsel would be a forceful champion of the interests of the putative Campbell class. The putative Neal class includes all the members of the putative Campbell class (all the recipients of erroneous telephone calls who told Synchrony that they had the wrong number would be among the class of all persons who received the allegedly improper calls). However, Neal's counsel was, at best, equivocal about the potential right of that "sub-class" to exist apart from the broader Neal class, suggesting that the distinction being drawn between those who informed Synchrony that it had reached the wrong number and those who had not done so has no legal significance. Therefore, neither Neal's nor Campbell's counsel seems able to fully represent the interests of both putative classes prior to a ruling on class certification.

Further, it would likely be a detriment to both putative classes for the Court to appoint GDR and Lemberg to be co-Interim Lead Counsel. While both GDR and Lemberg appear to each be capable professional firms, it is also clear both from their filings and their interactions at the hearing that they do not get along well, nor would they be able to work well together, perhaps because of their differing view on how best to prosecute this case as discussed above. In any event, there is no reason to believe that it would be more efficient or, perhaps more significantly, provide a benefit to the putative classes if the Court were to force Neal's counsel and Campbell's counsel to serve as co-Interim Class Counsel.

Accordingly, both Neal and Campbell's motions to appoint Interim Class Counsel will be denied. Neal's counsel and Campbell's counsel will continue to represent their respective

clients and putative classes separately, at least until the Court rules on motions for class certification.[3]

Finally, notwithstanding the ruling denying the appointment of Interim Class Counsel, the Court is mindful of and remains concerned about the prospect of inefficiency in the discovery and pre-certification course of these cases. Therefore, the Court will, by separate order, enter a Pretrial Order and Case Management Plan that requires the filing of a consolidated Amended Complaint (with separate alternative class allegations if necessary), requires the plaintiffs and defendants to avoid multiple, duplicative discovery requests to the other side and otherwise sets guidelines for the expeditious and efficient litigation of the merits of this matter.

**NOW THEREFORE IT IS ORDERED THAT**:

Plaintiffs Neal and Mott's motion to appoint their counsel, Greenwald Davidson Radbil PLLC and Terrell Marshall Law Group PLLC, as Interim Lead Counsel for the consolidated actions (Doc. No. 43) is **DENIED**; Plaintiff Campbell's motion to appoint his counsel, Lemberg Law LLC, as Interim Lead Counsel for the consolidated actions (Doc. No. 45) is **DENIED**; and Plaintiff Campbell's motion to stay the Mott case (Doc. No. 45) is **GRANTED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 25, 2019

Kenneth D. Bell
United States District Judge

---

[3] However, Neal and Campbell's counsel are forewarned that their inability to work together will not accrue to their advantage in the event that they have an appropriate occasion to seek compensation for their work in this matter. Specifically, the Court will carefully scrutinize any fee petition to identify time spent on the case that could have been avoided through a more cooperative working relationship among counsel.