UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Curtis Neal, *on behalf of himself and others similarly situated*, <br><br>    Plaintiff, <br><br>v. <br><br>Wal-Mart Stores, Inc., d/b/a Walmart and Synchrony Bank, <br><br>    Defendants. <br>_____ <br><br>Roy Campbell *on behalf of himself and all others similarly situated*, <br><br>    Plaintiff, <br><br>v. <br><br>Synchrony Bank, <br><br>    Defendant. | Civil Action No.: 3:17-cv-00022 |

## CONSOLIDATED CLASS ACTION COMPLAINT

### Nature of this Action

1. Curtis Neal and Roy Campbell bring this class action against Synchrony Bank ("Synchrony") and Wal-Mart Stores, Inc., d/b/a Walmart ("Walmart") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

1

\* \* \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

3. Upon information and good faith belief, Synchrony, on behalf of Walmart and other entities, routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system and an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service without prior express consent, in that it places autodialed or artificial or prerecorded voice calls to wrong or reassigned cellular telephone numbers, to cellular telephone numbers it was informed were wrong numbers, and to cellular telephone numbers is was instructed not to call.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

5. Venue is proper before this Court under 28 U.S.C. § 1391(b) as Mr. Neal resides in this district, a portion of the events giving rise to this action occurred in this district, and Defendants transact business in this district.

**Parties**

6. Mr. Neal is a natural person who at all relevant times resided in Charlotte, North Carolina.

7. Mr. Campbell is a natural person who at all relevant times resided in Glen Fall, New York.

8. Synchrony is an entity located in Draper, Utah.

9. Walmart is an entity headquartered in Bentonville, Arkansas.

**Mr. Neal's Factual Allegations**

10. In September 2016, Mr. Neal obtained a new cellular telephone number—(704) 912-XXXX.

11. Shortly thereafter, Mr. Neal began receiving telephone calls from Synchrony, on behalf of Walmart, on his cellular telephone number.

12. Mr. Neal received the calls at issue from Synchrony, on behalf of Walmart, from (913) 789-2979.

13. A caller who dials (913) 789-2979 is greeted with a prompt that states, in part: "Thank you for calling Walmart Credit Services."

14. Synchrony's calls, on behalf Walmart, to Mr. Neal's cellular telephone number were intended for a recipient other than him—in particular, a woman who he does not know.

15. On at least one occasion, Mr. Neal answered a call from Synchrony, on behalf of Walmart, and was greeted with an artificial or prerecorded voice.

16. On at least one occasion, Synchrony, on behalf of Walmart, left a voice message for Mr. Neal on his cellular telephone number by using an artificial or prerecorded voice.

17. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Synchrony, on behalf of Walmart, placed its calls to Mr. Neal's cellular telephone number by using an automatic telephone dialing system.

18. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Synchrony, on behalf of Walmart, placed its calls to Mr. Neal's cellular telephone number by using

"equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

19. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Synchrony, on behalf of Walmart, placed its calls to Mr. Neal's cellular telephone number by using (i) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone number in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008).

20. Upon information and good faith belief, Synchrony, on behalf of Walmart, placed its calls to Mr. Neal's cellular telephone number for non-emergency purposes—namely, to attempt to collect on a past-due account of a person other than Mr. Neal.

21. Upon information and good faith belief, Synchrony, on behalf of Walmart, placed its calls to Mr. Neal's cellular telephone number voluntarily.

22. Upon information and good faith belief, Synchrony, on behalf of Walmart, placed its calls to Mr. Neal's cellular telephone number under its own free will.

23. Upon information and good faith belief, Synchrony, on behalf of Walmart, had knowledge that it was using an automatic telephone dialing system and an artificial or prerecorded voice to place its calls to Mr. Neal's cellular telephone number.

24. Upon information and good faith belief, Synchrony, on behalf of Walmart, intended to use an automatic telephone dialing system and an artificial or prerecorded voice to place its calls to Mr. Neal's cellular telephone number.

25. Mr. Neal is not, nor was, one of Synchrony's customers or one of Walmart's customers.

26. Mr. Neal does not, nor did, have a business relationship with either Synchrony or Walmart.

27. Mr. Neal never applied for or obtained credit, or a credit card, from either Synchrony or Walmart.

28. Mr. Neal did not give either Synchrony or Walmart prior express consent to place calls to his cellular telephone number by using an automatic telephone dialing system or an artificial or prerecorded voice.

29. Upon information and good faith belief, Synchrony and Walmart maintain business records that show all calls Synchrony, on behalf of Walmart, placed to Mr. Neal's cellular telephone number.

30. Mr. Neal suffered actual harm as a result of the calls Synchrony, on behalf of Walmart, placed to Mr. Neal's cellular telephone number, in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

31. Upon information and good faith belief, Synchrony, on behalf of Walmart, as a matter of pattern and practice, uses an automatic telephone dialing system and an artificial or prerecorded voice to place calls to telephone numbers assigned to a cellular telephone service, absent prior express consent.

### Mr. Campbell's Factual Allegations

32. In the last four years, Synchrony began placing automated telephone calls to Mr. Campbell on his cellular telephone at telephone number 518-XXX-8773.

33. Synchrony called Mr. Campbell from telephone number 800-527-3369.

34. At all times mentioned herein, Defendant called Mr. Campbell's cellular telephone using an "automatic telephone dialing system" ("autodialer") as defined by 47 U.S.C. § 227(a)(1).

35. Upon answering a call from Synchrony, Mr. Campbell heard a prerecorded voice message indicating that the call was from Synchrony regarding the collection of a debt. There was no human representative to speak to on the incoming calls.

36. When Mr. Campbell did not answer Synchrony's calls, Synchrony left prerecorded/automated voice messages on Mr. Campbell's voicemail.

37. Mr. Campbell returned one of Synchrony's calls and spoke to a live Synchrony representative. The representative indicated to Mr. Campbell that Synchrony was calling his number to reach an individual named "Charmaine Thomas." Mr. Campbell advised Synchrony that that it was calling his phone number in error as he was not "Charmaine Thomas," and instructed Synchrony to put his number on the 'do not call list' and to cease calling.

38. The live Synchrony representative acknowledged Mr. Campbell's request and stated that Synchrony would cease calling.

39. However, Synchrony continued to place automated calls to Mr. Campbell's cell phone.

40. Mr. Campbell does not owe a debt to Synchrony.

41. Mr. Campbell did not give his cell phone number to Synchrony or provide prior express consent to Synchrony to autodial it.

42. Moreover, Mr. Campbell expressly requested that Synchrony cease calling his cell phone, which Synchrony acknowledged but then ignored. Accordingly, the automated calls placed by Defendant to Mr. Campbell were in willful and knowing violation of 47 U.S.C. § 227(b)(1)(A).

43. Mr. Campbell was annoyed, frustrated, and inconvenienced by Synchrony's calls.

44. The telephone number called by Defendant was and is assigned to a cellular telephone service for which Mr. Campbell incurs charges for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

45. The calls from Defendant to Mr. Campbell were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## Mr. Neal's Class Action Allegations

46. Mr. Neal brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class and subclass:

> *Class*: All persons and entities throughout the United States (1) to whom Synchrony Bank placed one or more calls, (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a Synchrony Bank customer; (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice, (4) from December 20, 2016 through the date of class certification, or where the first such call was placed on or after June 17, 2016 and through the date of class certification.

*Subclass*: All persons and entities throughout the United States (1) to whom Synchrony Bank placed one or more calls, on behalf of Wal-Mart Stores, Inc., (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a Synchrony Bank customer; (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice, (4) from December 20, 2016 through the date of class certification, or where the first such call was placed on or after June 17, 2016 and through the date of class certification.

47. Excluded from the class and subclass are Synchrony and Walmart, Synchrony and Walmart's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Synchrony and Walmart have or had a controlling interest.

48. Upon information and belief, the members of the class and subclass are so numerous that joinder of all of them is impracticable.

49. The exact number of the members of the class and subclass is unknown to Mr. Neal at this time, and can be determined only through appropriate discovery.

50. The members of the class and subclass are ascertainable because the class and subclass are defined by reference to objective criteria.

51. In addition, the members of the class and subclass are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Synchrony, Walmart, and by third parties.

52. Mr. Neal's claims are typical of the claims of the members of the class and subclass.

53. As it did for all members of the class and subclass, Synchrony, on behalf of Walmart, used an automatic telephone dialing system and an artificial or prerecorded voice, to place calls to Mr. Neal's cellular telephone number, without prior express consent, in that Mr. Neal is not, and never was, a Synchrony customer.

54. Mr. Neal's claims, and the claims of the members of the class and subclass,

originate from the same conduct, practice and procedure on the part of Synchrony and Walmart.

55. Mr. Neal's claims are based on the same theories as are the claims of the members of the class and subclass.

56. Mr. Neal suffered the same injuries as the members of the class and subclass.

57. Mr. Neal will fairly and adequately protect the interests of the members of the class and subclass.

58. Mr. Neal's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class and subclass.

59. Mr. Neal will vigorously pursue the claims of the members of the class and subclass.

60. Mr. Neal has retained counsel experienced and competent in class action litigation.

61. Mr. Neal's counsel will vigorously pursue this matter.

62. Mr. Neal's counsel will assert, protect, and otherwise represent the members of the class and subclass.

63. The questions of law and fact common to the members of the class and subclass predominate over questions that may affect individual class members.

64. Issues of law and fact common to all members of the class and subclass are:

   a. Synchrony and Walmart's conduct, pattern, and practice;

   b. Synchrony and Walmart's violations of the TCPA;

   c. Synchrony and Walmart's use of an automatic telephone dialing system as defined by the TCPA;

   d. Synchrony and Walmart's use of an artificial or prerecorded voice; and

   e. The availability of statutory penalties.

65. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

66. If brought and prosecuted individually, the claims of the members of the class and subclass would require proof of the same material and substantive facts.

67. The pursuit of separate actions by individual members of the class and subclass would, as a practical matter, be dispositive of the interests of other members of the class and subclass, and could substantially impair or impede their ability to protect their interests.

68. The pursuit of separate actions by individual members of the class and subclass could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Synchrony and Walmart.

69. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class and subclass.

70. The damages suffered by each individual member of the class and subclass may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class and subclass to redress the wrongs done to them.

71. The pursuit of Mr. Neal's claims, and the claims of the members of the class and subclass, in one forum will achieve efficiency and promote judicial economy.

72. There will be little difficulty in the management of this action as a class action.

73. Synchrony and Walmart have acted or refused to act on grounds generally applicable to the members of the class and subclass, making final declaratory or injunctive relief appropriate.

**Mr. Campbell's Class Action Allegations**

74. Mr. Campbell brings this claim pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf the following class:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Synchrony placed a non-emergency telephone call (4) using an autodialer or a prerecorded voice (5) after said person had advised Synchrony or their vendor that the call was to a wrong number.

75. Mr. Campbell represents and is a member of the Class.

76. Excluded from the Class is Synchrony and any entities in which Synchrony has a controlling interest, Synchrony's agents and employees, the Judge to whom this action is assigned, any member of the Judge's staff and immediate family and persons whose membership in the class is predicated on claims released in *Abdeljalil, et al. v. GE Capital Retail Bank*, 12-cv-02078 (S.D. Cal.).

77. Mr. Campbell does not know the exact number of members in the Class, but based upon the size and national scope of Synchrony and the automated nature of the calls, Plaintiff reasonably believes that the Class numbers in the thousands.

78. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendant.

79. There are questions of law and fact common to the members of the Class which predominate over any questions that affect only individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    i. Whether Synchrony engaged in a pattern of using an autodialer to place calls to cellular phones;

    ii. Whether Synchrony had prior express consent to place the calls;

iii. Whether Synchrony ignored consumers' 'wrong number' instructions; and

iv. Whether Synchrony willfully violated the TCPA.

80. As a person who received automated telephone calls from Synchrony on his cellular phone without having given prior express consent, and who advised Synchrony to cease calling, Plaintiff asserts claims that are typical of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the class, and has no interests which are antagonistic to any member of the Class.

81. Mr. Campbell has retained counsel experienced in handling class action claims, including class claims involving violations of federal and state consumer protection statutes such as the TCPA.

82. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of individual Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages for violation of the TCPA are small in comparison to the costs and expenses of litigation of such claims. Management of these claims is likely to present few difficulties because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones as Synchrony did not attempt to obtain consent required by the TCPA prior to placing the calls.

83. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**Count I –Violations of the Telephone Consumer Protection Act as to Mr. Neal and his Proposed Class and Subclass**

84. Mr. Neal repeats and re-alleges each and every factual allegation contained in paragraphs 6, 8-31, 46-73.

85. Synchrony, on behalf of Walmart, violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls to Mr. Neal's cellular telephone number, without his consent.

86. Synchrony, on behalf of Walmart, separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice to place calls to Mr. Neal's cellular telephone number, without his consent.

87. Walmart is liable for Synchrony's violations of 47 U.S.C. § 227(b)(1)(A)(iii) stemming from calls that Synchrony placed on Walmart's behalf.

88. Walmart, as Synchrony's principal, is also vicariously liable for Synchrony's violations of 47 U.S.C. § 227(b)(1)(A)(iii).

89. As well, principles of apparent authority and ratification make Walmart liable for Synchrony's violations of 47 U.S.C. § 227(b)(1)(A)(iii).

90. As a result of Synchrony's violations of 47 U.S.C. § 227(b)(1)(A)(iii), committed on behalf of Walmart, Mr. Neal and the members of the class and subclass are entitled to damages in an amount to be proven at trial.

**Count II -- Violations of the Telephone Consumer Protection Act as to Mr. Campbell and his Proposed Class**

91. Mr. Campbell repeats and re-alleges each and every factual allegation contained in paragraphs 7-9, 32-45, and 74-83.

92. Mr. Campbell brings this claim on behalf of himself and the Class.

93. Synchrony made automated telephone calls to the wireless telephone number of Plaintiff and the other Class members. These phone calls were made without the prior express consent of Plaintiff or the other Class members and were not made for emergency purposes.

94. Synchrony has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A), which makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or artificial or prerecorded voice."

95. Each of the aforementioned calls by Synchrony constitutes a violation of the TCPA.

96. Mr. Campbell and Class members are entitled to an award of $500.00 in statutory damages for each call made in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

97. Mr. Campbell and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

98. Mr. Campbell and Class members are also entitled to and do seek a declaration that:

- Defendant violated the TCPA;
- Defendant used an autodialer to call cellular telephones; and
- Defendant placed calls to the Plaintiff and the Class without prior express consent.

**Count III -- Violations of the Telephone Consumer Protection Act as to Mr. Campbell and his Proposed Class**

99. Mr. Campbell repeats and re-alleges each and every factual allegation contained in paragraphs 7-9, 32-45, and 74-83.

100. Mr. Campbell brings this claim on behalf of himself and the Class.

101. Synchrony made automated telephone calls to the wireless telephone number of Plaintiff and the other Class members. These phone calls were made without the prior express consent of Plaintiff or the other Class members and were not made for emergency purposes.

102. Synchrony has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A), which makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice."

103. Each of the aforementioned calls by Synchrony constitutes a willful violation of the TCPA.

104. Mr. Campbell and Class members are entitled to an award of up to $1,500.00 in statutory damages for each call made in willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

105. Mr. Campbell and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

106. Mr. Campbell and TCPA Class members are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an autodialer on calls to Plaintiff and the Class;

- Defendant willfully disregarded non-customer consumers' requests to cease calling;

- It is Defendant's practice and history to place automated telephone calls to consumers without their prior express consent.

**Mr. Neal's Demand for Trial by Jury and Prayer for Relief**

107. Mr. Neal is entitled to, and demands, a trial by jury.

WHEREFORE, Mr. Neal prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Mr. Neal as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Mr. Neal's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging that Synchrony violated 47 U.S.C. § 227(b)(1)(a)(iii);

e) Adjudging that Walmart, as Synchrony's principal, is liable for Synchrony's violations of 47 U.S.C. § 227(b)(1)(a)(iii);

f) Enjoining Synchrony, on behalf of Walmart, from continuing to place calls to Mr. Neal's cellular telephone number, and from continuing to place calls to the cellular telephone numbers of members of his proposed class and subclass without prior express consent;

g) Awarding Mr. Neal and the class and subclass damages under 47 U.S.C. § 227(b)(3)(B);

h) Awarding Mr. Neal and the class and subclass treble damages under 47 U.S.C. § 227(b)(3);

i) Awarding Mr. Neal and the class and subclass reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

j) Awarding Mr. Neal and the members of the class and subclass any pre-judgment and post-judgment interest as may be allowed under the law; and

k) Awarding such other and further relief as the Court may deem just and proper.

**Mr. Campbell's Demand for Trial by Jury and Prayer for Relief**

108. WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

  A. Statutory damages pursuant to 47 U.S.C. § 227(b)(3);

  B. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

  C. Declaratory relief as prayed for herein;

  D. Such other relief as the Court deems just and proper.

109. Mr. Campbell demands a trial by jury on issues so triable.

Dated: August 20, 2019       Respectfully submitted,

By: */s/ Sergei Lemberg*
  Sergei Lemberg (admitted *PHV*)
  Stephen Taylor (admitted *PHV*)
  LEMBERG LAW, LLC
  43 Danbury Road
  Wilton, CT 06897
  Telephone: (203) 653-2250
  Facsimile: (203) 653-3424

  *Counsel for Roy Campbell and the Proposed Class*

By: */s/ Aaron D. Radbil*
  Aaron D. Radbil (*pro hac vice*)
  Greenwald Davidson Radbil PLLC
  401 Congress Ave., Ste. 1540
  Austin, Texas 78701
  (512) 802-1578
  (561) 961-5684 (fax)
  aradbil@gdrlawfirm.com

  Wesley S. White
  Law Offices of Wesley S. White
  State Bar No.: 43916
  2300 E. 7th Street, Suite 101
  Charlotte, NC 28204
  (702) 824-1695
  wes@weswhitelaw.com

  *Counsel for Curtis Neal and the Proposed Class and Subclass*

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2019, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to counsel of record.

> */s/ Aaron D. Radbil*
> Aaron D. Radbil